UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MEGAN KING,<br><br>    Plaintiff,<br><br>    v.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:23-CV-00443-GSL-SLC |

**OPINION AND ORDER**

Megan King was awarded long-term physical disability benefits through her former employer's benefits plan. After four years, the plan administrator, Reliance Standard Life Insurance Company, determined that King was no longer eligible for those benefits. King appealed. When Reliance failed to render a decision or seek an extension within 45 days of receiving King's appeal, King brought this suit. Four months later, Reliance denied her appeal.

The question before the Court is whether the evidence gathered by Reliance *after* King's claim was exhausted should be part of the evidentiary record here. For the following reasons, King's Motion to Exclude Defendant's Post-Exhaustion Evidence [DE 21] is granted.

**Background**

Megan King ("Plaintiff") worked as a Senior Case Specialist for Medtronic, where she was enrolled in Medtronic's Long-Term Disability Plan ("Plan") administered by Reliance Standard Life Insurance Company ("Defendant"). [DE 1, ¶¶ 7-9]. In August 2018, Plaintiff developed a pituitary-gland-related neurocognitive disorder. [*Id.*, ¶ 11]. As a result, she suffered significant physical and mental disabilities that impacted her ability to work. [*Id.*, ¶¶ 11-12]. Plaintiff applied for long-term disability benefits under the Plan. [DE 1, ¶ 13]. Defendant

approved Plaintiff's claim and began to pay Plaintiff long-term disability benefits. [*Id.*, ¶ 14]. In September 2022, Defendant determined that Plaintiff was no longer eligible for those benefits. [*Id.*, ¶ 15]. However, by that same notice, Defendant informed Plaintiff that she was eligible for mental disability benefits, which Defendant then awarded her. [*Id.*, ¶ 16]. Per the Plan, such benefits are capped at 12 months. [*Id.*].

On July 28, 2023, Plaintiff appealed Defendant's determination that she was no longer eligible for physical disability benefits. [*Id.*, ¶ 17]; *see* [DE 22-1]. Defendant received that appeal three days later, on July 31, 2023. [DE 22, p. 3]. Plaintiff's appeal included evidence of her continuing physical disability and how it prevented her from working. [DE 1, ¶ 18]; *see* [DE 22-1]. The appeal also reminded Defendant of its obligation under the Department of Labor's Claims Procedure Regulations ("DOL Regulations"). [DE 1, ¶ 19]; *see* [DE 22-1, p. 6]; *see* 29 C.F.R. § 2560.503-1(f)(3) (providing that for disability benefits a plan administrator must either render a decision on a claim within 45 days of receiving it or properly seek a 30-day extension of the 45-day period). Plaintiff considered her claim as exhausted on September 11, 2023, 45 days from when she sent the appeal, because she had heard nothing from Defendant. [DE 1, ¶¶ 19, 20]; [DE 21-2, p. 3]. Subsequently, the parties exchanged passing correspondence. Plaintiff, by a letter dated September 14, 2023, sought confirmation from Defendant of Plaintiff's understanding that her claim was now exhausted. [DE 1, ¶¶ 21-23]; *see* [DE 22-2, pp. 3-4]. In a letter dated September 13, 2023, but postmarked September 15, 2023, Defendant notified Plaintiff that it received her appeal and that it needed additional time to review. [DE 1, ¶ 24]; *see* [DE 1-2]. Two weeks later, Defendant notified Plaintiff that after reviewing the evidence included with her appeal, Defendant would be enlisting the help of an outside vendor to

independently review the claim. [DE 21, p.3]; *see* [DE 21-3]. On October 19, 2023, Plaintiff brought this action. [DE 1].

In the following months, Defendant sent two letters to Plaintiff, both containing evidence gathered by Defendant. The first, provided to Plaintiff on November 6, 2023, included the evidence from the independent review. [DE 21, p. 4]; *see* [DE 21-4]. The second, provided to Plaintiff on January 26, 2024, included Defendant's internal assessment of the appeal. [DE 21, p. 4]; *see* [DE 21-6]. For Defendant, each set of evidence supported the discontinuation of Plaintiff's physical disability benefits. Plaintiff responded to each letter by reminding Defendant of her position that she exhausted the administrative remedies available via the Plan. [DE 21, p. 4]; *see* [DE 21-5]; *see* [DE 21-7]. Accordingly, she felt that she was not obligated to respond. Finally, on February 13, 2024, nearly seven months after the appeal was filed and four months after Plaintiff filed this action, Defendant issued its denial of Plaintiff's appeal. [DE 21, p. 5]; [DE 22, p. 3].

At the preliminary pretrial conference, the parties agreed that Defendant would provide Plaintiff with its proposed ERISA record no later than March 1, 2024.[1] [DE 17, ¶ 1]. Upon receipt of the proposed record, Plaintiff moved to reduce its scope. [DE 21]. Essentially, she argues that once her claim was exhausted, the administrative record closed. To allow evidence gathered after the point of exhaustion into the district court record would give Defendant more time than it is afforded by the DOL Regulations. Defendant concedes that its ultimate denial, rendered many months after Plaintiff filed the appeal, is late. [DE 22, p. 1]. Thus, Defendant argues, the de novo standard of review applies. Because, in ERISA cases, that standard means

---

[1] An ERISA record is also referred to as the administrative record. It is the set of evidence upon which the claim was decided while it was subject to Plan's claims adjudication process. At the district court level, this set of evidence serves as the starting point for the record upon which the district court would conduct its independent review of the claim.

that the district court conducts an independent review of the claim, Defendant says the Court should freely allow any evidence bearing on the ultimate issue: Plaintiff's eligibility for benefits. *See* [DE 22]. Plaintiff filed a reply. [DE 23]. This issue is fully briefed and ripe for decision.

## **Legal Standard**

Under ERISA, a claimant may file suit in federal court on the basis that an employee benefits plan failed to provide a reasonable claims procedure that would yield a decision on the merits. 29 U.S.C. § 1132(a); *see* 29 C.F.R. § 2560.503-1(l). The "minimum requirements for [reasonable claims procedures]" are set out in the DOL Regulations. 29 C.F.R. § 2560.503-1(a). Section 2560.503-1(f)(3) of the DOL Regulations provide that for a claim of disability benefits, the plan administrator must notify the claimant of its decision no later than 45 days from the receipt of the claim by the plan administrator. The plan administrator may extend the time to respond by up to 30 days, but the request must meet certain criteria laid out in the DOL Regulations. *See* 29 C.F.R. § 2560.503-1(f)(3) (which allows for a 30-day extension when the plan administrator determines such an extension is necessary due to matters beyond its control). If a plan administrator fails to "strictly adhere" to the DOL Regulations, e.g., it fails to comply with (f)(3)'s timing requirements, a claimant is "deemed to have exhausted the administrative remedies available under the plan" and may file suit. 29 C.F.R. § 2560.503-1(l)(2).

### A. Exhaustion Deadline

Before deciding the scope of the record, the Court must first determine whether Plaintiff's claim was actually exhausted so it can determine the proper standard of review. According to Plaintiff, the exhaustion date was September 11, 2023—45 days after she sent the appeal to Defendant. [DE 1, ¶ 19]. Though Plaintiff sent the appeal on July 28, 2023, "[Defendant] received Plaintiff's appeal . . . on July 31, 2023." [DE 22, p. 3]. Under the DOL

4

Regulations, "the plan administrator shall notify the claimant . . . of the plan's adverse benefit determination [or the special circumstances warranting an extension] . . . 45 days after the *receipt* of the claim by the plan." 29 C.F.R. § 2560.503-1(f)(3) (emphasis added). So, the deadline for Defendant to "notify claimant" in this case was September 14, 2023—not September 11, 2023, as Plaintiff suggests. *Id.* Even so, Defendant's response was untimely. The response letter, dated September 13, 2023, was postmarked September 15, 2023. [DE 1-2, pp. 2, 4]. The Court considers the postmarked envelope because as an attachment to the Complaint, it is considered part of the Complaint. Fed. R. Evid. 10(c). Regardless of the contents of Defendant's response letter, it was a day late.[2] Consequently, Plaintiff's claim was exhausted on September 14, 2023, because Defendant's noncompliance with § 2560.503-1(f)(3) constituted a failure to "establish and maintain reasonable claims procedures." 29 C.F.R. § 2560.503-1(b); *see Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1000 (7th Cir. 2019) (holding that § 2560.503-1 deadlines are bright lines). Now, the Court must determine how this impacts its review.

### B. Standard of Review

When a benefit plan gives the administrator discretionary authority to determine a claimant's eligibility for benefits, as is the case here, the denial of benefits is reviewed under an arbitrary and capricious standard. *Fessenden*, 927 F.3d at 1001 (citations omitted). That standard "reflects deference to the administrator's exercise of discretion." *Id.* (citations omitted). "But when an administrator fails to render a final decision, there is no valid exercise of discretion to which the court can defer, and it decides de novo whether the insured is entitled to benefits." *Id.*

---

[2] Because of this finding, the Court need not decide whether Defendant's first response to Plaintiff's appeal—the letter postmarked September 15, 2023—properly seeks an extension under the DOL Regulations. 29 C.F.R. § 2560.503-1(f)(3).

(citations omitted). Since Defendant "violated a hard-and-fast obligation" its late decision is not entitled to deference, and this Court will review Plaintiff's claim de novo. *Id.* at 1000.

    C. **ERISA Record**

According to Seventh Circuit precedent, de novo review is "a misleading phrase" when it comes to ERISA. *Krolnik v. Prudential Life. Ins. Co. of America*, 570 F.3d 841, 843 (7th Cir. 2009). The district court is supposed to make "an independent decision rather than [conduct a] 'review[.]'" *Id.* (quotation omitted). Under this standard, "what happened before the plan administrator is irrelevant[.]" *Dorris v. Unum Life Ins. Co. of America*, 949 F.3d 297, 304 (7th Cir. 2020) (citations omitted). "That means that whether the plan administrator gave the employee a full and fair hearing or undertook a selective review of the evidence[,]" before exercising its discretion and rendering a decision, "is irrelevant." *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 328 (7th Cir. 2012). The district court is now the decisionmaker. When making its independent decision, "[t]he court can limit itself to deciding the case on the administrative record but should also freely allow the parties to introduce relevant *extra*-record evidence and seek appropriate discovery." *Dorris*, 949 F.3d at 304 (emphasis added) (citing *Marantz*, 687 F.3d at 328; *Krolnik*, 570 F.3d at 843; *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 490 (7th Cir. 2007)). In other words, the scope of the record is within the Court's discretion.

Here, the Court declines to allow Defendant to introduce evidence gathered after the claim was exhausted. The foregoing precedent draws a clear distinction between evidence in the administrative record and the allowance of "extra-record" or additional evidence. *See Patton*, 480 F.3d 478; *Krolnik*, 570 F.3d 841; *Marantz*, 687 F.3d 320; and *Dorris*, 949 F.3d 297. In this case, by failing to comply with the deadlines, Defendant surrendered the opportunity to establish

its evidence in the administrative record. To allow Defendant to submit its chief rebuttal evidence at this stage would circumvent the purpose of § 2560.503-1(f)(3)'s deadlines. Affording a plan administrator this extra time to gather evidence would "undercut the benefits of exhaustion for claimants." 927 F.3d at 1005. The Regulations already provide mechanisms for an extension of the original 45-day period. Defendant's failure to utilize that extension procedure should not be rewarded. The logic behind the *Fessenden* Court's concern that plan administrators might use missed deadlines to manipulate the standard of review is equally applicable to the situation in this case. *Id.* at 1004 ("A court that excused even more administrative delay would upset the careful balance that the regulations strike between the competing interests of administrators and claimants."). If the district court allowed the inclusion of post-exhaustion evidence that creates a party's administrative record rather than supplements it, the court would be impermissibly extending the deadlines set forth in the DOL Regulations. In this case, the Court exercises its discretion to limit itself to the administrative record, which it considers closed as of the exhaustion date: September 14, 2023.[3]

---

[3] Defendant's interpretations of *Dorris*, *Krolnik*, and *Marantz* are inapposite here. Both *Dorris* and *Krolnik* were about the relative strength of each plaintiffs' administrative records, and whether the claimants should be allowed to *supplement* those records with evidence introduced, for the first time, in the district court. *Dorris*, 949 F.3d 297; *Krolnik*, 570 F.3d 841. The *Dorris* Court explained how claimants and plan administrators are differently situated: "[since t]he plaintiff is the one who is obligated to prove [entitlement] to benefits . . . [the plaintiff] should be permitted to patch [any] gaps before the court reaches final judgment." *Dorris*, 949 F.3d at 304. As for *Marantz*, Defendant cites it for the proposition that when making its independent decision, the district court should consider any "procedural foibles . . . irrelevant." *Marantz*, 687 F.3d at 328. The procedural requirement at issue there—the nature and disclosure of evidence that the decisionmaker relied upon—is susceptible to minor shortcomings or varying interpretations. A deadline, the issue in this case, is not.

## Conclusion

Accordingly, Plaintiff's Motion to Exclude Post-Exhaustion Evidence from ERISA Record and Objections to Proposed ERISA Record [DE 21] is **GRANTED**. The record before this Court is limited to evidence gathered and submitted before the claim was deemed exhausted on September 14, 2023.

SO ORDERED.

ENTERED: December 19, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court